All right. Good afternoon, everybody. Welcome to the Fourth Circuit. We have three cases on the calendar this afternoon. Before we get started, I want to acknowledge and thank the Honorable Thomas T. Cullen, the United States District Judge from the Western District of Virginia, for joining us this afternoon. Welcome, Judge Cullen. We're glad to have you. Thank you for having me. All right. The first case on the docket is 20-2001, Western World Insurance Group v. Church Mutual Insurance Company. And Ms. Tillman, we'll hear from you. Thank you, Your Honor, and good afternoon. I'm Ainsley Tillman, and I'm here with my colleague, Ian Ford, on behalf of the Appellant Church Mutual Insurance Company. We would like to reserve seven minutes of our time for rebuttal. May it please the Court. Two million dollars. Two million dollars. That's how much money was available to the refuge by virtue of its direct insurance policies with Western World and Guide 1. That two million dollars in available insurance proceeds was sufficient and more than adequate to completely cover the refuge for the loss that it sustained when the church property that secured its mortgage was set on fire. Because the refuge had a complete remedy at law, the District Court was wrong to fashion a remedy in equity. I'm here today to answer this Court's questions and to urge it to find that the District Court erred when it invoked equity in the face of a complete contractual relief that was available to the refuge. All of the District Court's errors germinated in its decision to apply equity. This Court is reviewing the District Court's decision de novo, and it's reviewing the District Court's determination of South Carolina law de novo. South Carolina law is clear, and it holds that the basis for granting equitable relief is the impracticability of obtaining full and adequate compensation at law. In other words, in South Carolina, as it was in jolly old England and has been for time immemorial, equity is... Ms. Tillman, wasn't the mortgager here bound by the mortgage to ensure the mortgage property at issue? Yes, Your Honor, that's exactly right. So abundant life was bound by its mortgage to ensure the property. If that's the case, under South Carolina law, the mortgagee has an equitable lien in the insurance proceeds per the NAP case, doesn't it? That is true under certain circumstances, and particularly, Your Honor, where the mortgagor, which in this case was abundant faith, breaches its covenant to protect the mortgage interest of the mortgagee. And in this case, the facts are clear that, in fact, abundant faith did not breach that covenant. There is a covenant to insure your property. Well, it didn't insure the property for a time, right? Yes, Your Honor. Refuge had to go out and get its own insurance, which is why we have so many policies here. That's correct. And initially, so we are looking at this case from the standpoint of what abundant faith promised to the refuge. And that promise is contained in the mortgage. And the mortgage does contain a promise to insure the property. And abundant faith initially fulfilled that promise by getting a first insurance policy with Stillwater. It subsequently allowed that policy to lapse, in which case the refuge noticed that and So how is what you're saying, it sounds like what you're saying still falls within the South Carolina law in that case that would make there an equitable lien in this case. No, Your Honor. How is it different here? It is different because equity is limited in its power and jurisdiction and it only can be invoked when there is not an adequate remedy at law. And in this case, the law is the contract, the contract between the mortgagor and the mortgagee. And the contract says that the refuge will be covered by insurance. That's the requirement within that mortgage contract. And abundant faith initially allowed coverage to lapse, but then it fulfilled that covenant. It provided to the refuge an adequate remedy at law vis-a-vis the guide one insurance policy, which abundant faith procured in fulfillment of its covenant. It's a direct insurance contract between the refuge as a mortgagee and guide one insurance. And it is to that contract that the district court should have looked in trying to find a remedy for the mortgagee, which was the risk to the mortgagee was that that church property that secured its mortgage might be uncovered by insurance. And so therefore, the district court should have looked to see first at law whether there was coverage. And there was. That was the guide one insurance policy. And also interestingly, that mortgage contract also permitted the refuge to take out its own insurance in the event that coverage lapsed. And we know that the refuge did that. That's the Western world policy. And so contractually, the refuge had two remedies available to it. Yes. Now, the refuge shouldn't have had to have taken out the Western world policy, though, if abundant faith had done what it was required to do under the mortgage, correct? Well, sure. And actually, the contract, the mortgage contract covers that situation. It again provides a contractual remedy to the refuge in that event. The mortgage contract says that if the refuge has to take out policy, which it did, a policy, then it can recover the proceeds from the mortgage, which is abundant faith. So again, there is there is not there. There were contractual provisions that addressed all of the scenarios here. Ms. Tillman, can I ask a question? So you started off the argument by saying that there was more than abundant coverage here to cover the loss. And I don't that I think that's right. But isn't the question how that loss is to be allocated amongst the competing insurance policies? That is that was the the complaint was a declaratory judgment to determine how that loss should be allocated among the competing insurance companies. And the answer is found within the contractual provisions of the of the insurance policies. And what we know from reading the contracts is that there was a direct insurance policy between Western world and the refuge. There was a direct insurance policy between guide one in the refuge. And then there was arguably an insurance policy between Church Mutual and Abundant Faith, which did not name the refuge. And so the district court, which had been asked to determine what coverage was available to the refuge, should have analyzed those policies to determine that there was coverage available both under Western World's policy and under guide ones, but none available under Church Mutual. That at law was the correct determination. But improperly, the district court, seeing three insurance companies before it, decided to sort of invoke equity and it did it like a witchcraft gone wrong. Well, Ms. Tillman, let me ask you about that, because I may well agree with the notion that it invoked a little bit too much equity here, because the question is, even assuming that someone is entitled to an equitable lien, that entitlement is only as good as the underlying right to insurance proceeds under the policy. So you don't step into any better shoes simply by virtue of the fact that you have an equitable lien. And it seems to me that that's where the district court might have gone awry, making an assumption that somehow the equitable lien put this particular party in a better position than it would otherwise have been. And isn't that the problem here? That's one of any number of properties. If equity was properly invoked, then next, the district court erred in wielding its power improperly. And that the error there is that equity, even if it's properly invoked, cannot supplant the law. It cannot rewrite or supplant contractual provisions or statutory provisions that exist. And in this case, there was. And that would include any defenses that might be available under the policy that the insurance company could assert against the original insured, right? That's exactly right. In equity, properly, the mortgagee would stand in the shoes of the mortgager. And it would stand in the shoes of the mortgager vis-a-vis its direct contract with Church Contract was. But it would not be entitled to independently entitled to any proceeds that the contract did not already provide to the insured. Ms. Tillman, can I ask you this? And I think this is the argument that you described is if the district court properly invoked an equitable lien, nevertheless, they had an equitable lien in nothing. And I think you made a couple of arguments. And I want to make sure I understand why it's an equitable lien in nothing. I think it'd be one of two things. One is that in the first instance, there wasn't a valid enforceable insurance contract because the consideration wasn't paid. All the reasons that you laid out and that the district court ultimately rejected. The other, and this gets to, I think, what Judge Diaz was asking, is if there was a valid defense. And in this case, on its face, it seems like there would have been a valid exclusion for arson. But your client, that wasn't raised at the summary judgment stage. As I understand it, that was reserved for trial so the district court never had an opportunity to apply that exclusion. So if it doesn't apply, what other defenses are available? So it's not that it doesn't apply. And it was raised. It was reserved as a defense. It was raised as an affirmative defense. And so the answer is properly. If the district court had properly found an equitable lien, then its next step would have been to interpret the church mutual policy and to determine whether, under the terms of the policy, it provided coverage to abundant faith. And that never happened. Not because church mutual didn't raise it. Western world didn't raise it either. It didn't happen because the district court wrongly skipped that step. And it just found that the refuge was independently entitled to proceeds regardless of the policy language which it never analyzed. But yes, church mutual had raised as an affirmative defense the intentional acts exclusion within its policy which, at law, would have excluded abundant life's claim to proceeds. And so therefore, really, it was an equity that the district court aired. It was an equity in applying equity at all and then applying it improperly. And for that reason, because equity should never have been in there. Because you're saying the arson exclusion should have applied? Sure. At law, if the contract had been interpreted at law, as opposed to misapprehended in equity. And we... Well, wait. Can we go back to the equitable? What is your problem with the court at the second step? What step? You said the court missed the second step. What is it you wanted the district court to do? So that properly, the district court should have only interpreted the contracts as written at law. And so properly, what the district court... Is that your question? The district court should have interpreted the church mutual policy as it was written? No, I guess my question was, assuming the district court was right to interpret it in equity, then what is your response to that? If it was proper to interpret the contract in equity, what's your next problem with that? And I'm sorry, Judge Diaz, I caused her to go over time. No, you take as much time as you need. Well, thanks. So... No, not you, Ms. Tillman. I meant Judge Sackler. Well, may I have some time to answer Judge Sackler's question, please? You may. That was a nice try, Ms. Tillman, but it's not true. I'll try and do it as briefly as I can. And the answer is, what the district court did, having found that equity applied wrongly, it then invoked just an entirely other equitable doctrine, which was reformation of the contract. It rewrote the contract. Without performing the analysis, it would have been necessary to equitably reform a contract. And in fact, later in a subsequent order, it found that there were no grounds for equitable reformation because there was not a contract between the refuge and church mutual. And I thank you very much. Thank you, Ms. Tillman. Mr. Waring? Thank you. Brad Waring on behalf of Western World Diapoly and my partner, Kenny Gardner, we'll reserve five minutes for him to answer some questions, or at least talk about two other matters that came up. What... I think the court gets it. What this case boils down to is an objection... I don't feel like I get it yet. Well, I think what it boils down to is an objection over Judge Seymour's application of the time-honored principles to provide a fair and equitable remedy in a case with extremely unusual, some would say bizarre, I suspect, facts. This is not your average run-of-the-mill failure to name a mortgagee on a policy of insurance and thereafter, as Judge Diaz properly pointed out, what you usually have in that circumstance is that the mortgagee who was not named would rise and fall on the fortunes of the underlying insured. The facts here is what makes the case so bizarre. And yes, this is a de novo review, but the appellant has the burden of convincing this that the preponderance of the evidence was against Judge Seymour's findings, and we'll come to those facts in just a second. At the outset, it is important to note that she cites Regions Bank versus Wingard as the kind of bellwether for utilizing a equitable remedy. We contend that that case holds the key to upholding her decision. There's probably no reported case in South Carolina that better summarizes the jurisprudence of equity and its application. One of the cases in Wingard that's cited is Brown versus Plata that says, once invoked, the scope of a district court's equitable powers is broad, for breadth and flexibility are inherent in equitable remedies. So, you know, the notion that a policy was not issued is a little ludicrous. All one has to do is look at the appendix number 280. It's a letter of August the 5th, 2016, from Church Mutual's claims manager to Abundant Faith and Pastor Banks. Is that when he said he pushed the button? No, no. He already pushed the button? He'd already pushed the button by then. This is even better. We understand that you have hired Mr. Bob Freitag to assist you in the adjustment of your claim. The letter goes on to say, Church Mutual issued policy number, and then he gives the policy number, to Abundant Faith Lighthouse of Jesus Christ Church. Effective policy dates are 7-6-16 to 7-6-17. Interestingly, that letter was copied to the agent, Bob Jurick. Church Mutual then began to investigate the loss and took an examination under oath of Reverend Banks. And one has to ask, merely, how in the world could Church Mutual avail themselves of the contractual right to take an EUO if no policy ever existed? I mean, the inquiry can stop there. There's a lot. Could I ask you this question? Certainly. Assume that I agree the facts of this case are paradigmatic of when an equitable lien applies. That there was a policy issued, it was binding, and that Abundant Faith was contractually obligated to list the mortgagee, and it didn't do that. So you check both those boxes. The argument I'm having trouble with is because you had this Gad 1 policy that covered more than the mortgage amount, why isn't that an adequate remedy at law? Why doesn't that trump, whether the district court got it right or not, the application of equitable lien? I believe that Judge Seymour believed that without allocating, that would be unfair to Gad 1. You've got to remember that this was a declaratory judgment brought by Gad 1 for allocation of the proceeds. Gad 1 was adamant that not only had Church Mutual issued a policy, which I think I've just established, but in addition, that the failure to name the mortgagee was either negligence, a mistake, or on behalf of Church Mutual. And those are the facts that I referred to earlier, and I'd be happy to turn to those. So in other words, suing Gad 1 doesn't remedy that wrong. In other words, the failure to list the mortgagee. That is correct. And I believe what the appellant can't seem to stomach is that once the court came to the conclusion that Western World possessed an equitable lien, which is the law in South Carolina, an unnamed mortgagee possesses an equitable lien in the proceeds, and Judge Diaz has it exactly right, the real issue is, well, does that mean that they're subject to the defenses that they may have against the insured? In this case, because of the very strange facts and circumstances, the court properly invoked equity to find an equitable and fair remedy. Part of that was the finding that there should be an allocation based on the pro rata amounts on the two policies that existed. Now to jump the hurdle that Judge Diaz has an issue with, you've got to look at these facts, and I'm just going to list a few of them because they are fairly compelling. First, the reason that Banks was shopping for coverage in the first place was because he'd received a letter from the mortgagee, the refuge, about him letting the Stillwater policy lapse. He recognized his duty to the mortgagee to protect them. He had just done so on the Guide 1 policy just a few days before. The uncontradicted evidence in the record is that Church Mutual's agent, Jurek, who is, by the way, a direct employee of Church Mutual, met Banks at a local McDonald's because Jurek needed Wi-Fi to complete the application for the Church Mutual policy. Interestingly, his affidavit at Appendix 513 is completely silent as to whether he asked Banks if he had a mortgage. The only evidence in the record is that he never asked Banks whether he had a mortgage. One has to wonder how an employee who is writing almost $800,000 in building coverage without inquiring if the property is subject to a mortgage, how an agent can- Mr. Waring, can I ask, I'm sorry to interrupt you, but maybe you're going to get to this, but how do these facts support your argument, which I think is coming, that somehow trumps the conventional law that someone who is entitled to relief and equity under an insurance policy rises or falls on the text of the policy, including any defenses? I think that Judge Seymour recognized that where, and I think all you have to do is take a look at the Supreme Court case Camp v. Boyd that says equity relieves of consequences of accident and mistake as well as fraud. There's a South Carolina case cited in Wingard that says, for one to have notice of an outstanding equitable interest, it's not necessary to know the identity of the third party or the extent of his interest. It is sufficient that one either knows, and this is the key phrase, or ought to know some third party interest exists. And that's precisely what the facts showed here. Jurek didn't ask- Right, but again, all that seems to suggest is that that entitles your client to an equitable lien, but it doesn't address the question of whether or not that somehow trumps all of the conventional, you know, language that suggests that that lien is only as good as the text and substance of the policy. What's your best case for that notion that equity can rise so far as to dispense with defenses under a policy for someone who has an equitable lien? Under these facts, Your Honor, all I can say is that there is no defense of arson under this particular matter because- Well, that's a different issue. You know, you might well prevail on the merits of whether or not there was a defense. But the question is whether or not the insurer in this case is entitled to assert that defense. Well, you know, it wasn't raised below, as was pointed out first. Well, your opposing counsel said it was reserved below. I'm not sure what she means by reserved, but I don't recall it being argued at the time of the motion hearings. I could be wrong about that. I wasn't prepared to go back and look at that. I just, we addressed it by virtue of the fact that whatever charges, if they're trying to deny on an arson defense to claim that there was arson and fraud that took place in the case, you know, and they were relying on a criminal investigation, that has been all cross. So that's where we are. I'm getting over my time for Mr. Gardner to speak. And so unless there's other questions I can respond to, I'd like to turn it over to him. Well, I think we're going to go in order of, let's see. Right, Mr. Gardner is going to speak. But so, is that all you have, Mr. Waring? No, that's not all I have. That's an open, that's an open, sorry I asked that question that way. So if you want to cede your time to Mr. Gardner, that's fine. I will, Your Honor. I would just say in conclusion that if you adopt the argument that the appellants are pressing you here, you would be holding, and it would be unjust, we believe, that Western World forfeit its debt, or the debt that's owed under this scenario. And that equity abhors a forfeiture. So, Mr. Gardner, I'll turn it over to you. May it please the court. My name is Kenny Gardner on behalf of Western World. And I'm here to specifically respond to the appellate's two arguments in its brief. The first, that the district court's ruling that Western World's policy was excess to that of Church Mutual and Guide One. And that the district court's ruling that Western World's assignment of the mortgagee interest did not extinguish its right to the judgment regarding Church Mutual's unpaid pro rata share. We've discussed some of the first argument already on whether or not that there was an insurance policy. I think the facts are sufficient to show that they were. All of the material terms were agreed upon. Mr. Banks may have intended to cancel the policy later, but he certainly intended to enter it. And when he attempted to cancel it, they told him it was too late. They then issued him a policy. And all subsequent times of the fire laws acted as if there was, in fact, a policy intact until four months after the fire laws. With regard to the position that there was no consideration, again, despite no payment of the premium, they still issued a policy. And they took no- I'm sorry to interrupt you, but I have a question you mentioned just a second ago, kind of the last issue of the analysis. And all of this is difficult, but this is one I'm really struggling with. Is this excess insurance issue the district court held? That the Western world policy was in excess of the church mutual policy. And you know, South Carolina property law better than I do. But as I understand it, essentially a valid excess insurance clause provides coverage for amounts that exceed limits of other insurance covering the same risk in the same property. You agree with me on that? That's part of it. It also requires the same insured for the same period. And that's Blanding versus Long Beach mortgage. And in this particular case, they were not the same insured. Church mutual insured abundant face mortgage interest. Guide one insured abundant face mortgage interest. Western world insured the mortgagee's interest of the refuge. So that's my question, right? The mortgagee's interest and the mortgagee's interest are separate interests in property. So if you apply this rule about valid excess insurance, Western world cannot be in excess to church neutral because they insure different property interests, a mortgagor's interest versus the mortgagee's interest. So I just don't follow how you get to Western world is access to church mutual. You can help me with that. Well, it's other insurance. And what it is, is that you have to look at what the policies attempt, the risk the policies attempt to insure. So because both church mutual and guide one insure abundant face interest, those excess are canceled out and they are responsible for a pro rata share. Our policy says very clearly that if there's any other insurance, whatever the circumstance, we will be in excess of that. And the court properly, we believe, found that. I'm going through turning to the next point of Western world's assignment of the mortgage interest and extinguish the pro rata share. Western world remained the real party and interest to the sums due and owed by church mutual. Western world paid the refuge for its mortgage interest and took an assignment of all of its rights, including the mortgage, to pursue church mutual for its pro rata share. That's exactly what we did. We took it to pursue church mutual. We received a judgment against church mutual for its pro rata share. And the court found that we were entitled to the sum. An equitable lien is neither an estate or property in the thing itself, nor a right to recover the thing, but it's simply a right of special nature over the thing, which constitutes a charge upon the thing. And moreover, an equitable lien is a mere floating equity until a judgment or payment of the debt or claim is rendered. But even though not judicially recognized until the judgment declaring its existence, it relates back to the time it was created by the conduct of the parties. And here, that's exactly what the court found, that Western world had a special right, an equitable lien in the sums. It wasn't solely on this mortgage. We paid the money that we were otherwise not responsible for paying. When you read all of the other insurance clauses together, and it relates back to where Western world paid the refuge. That's where that interest comes in. And it goes back farther when church mutual refused to pay the refuge. The lien itself is on the sums owed pursuant to church mutual's policy. And the pro rata shared by church mutual established the judgment. And lastly, we never assigned those rights. We never assigned the rights to go after that sum against church mutual. The release very clearly says that we carved that part out so that we can continue to collect the pro rata share because otherwise we're not made whole.  And because we expressly reserve those rights, we are entitled to the judgment that was already issued and rendered against church mutual. The manifest injustice that church mutual refers to by not forcing it to pay a pro rata share, that wouldn't be the manifest injustice, but allowing a complete forfeiture of the sums owed. I mean, again, the court in trying to and employing its tools for equity found that because they insured the same interest, they canceled each other out. Therefore, we were excess. So unless those church mutual and guide one policies didn't cover it, Western world never came into play or was not supposed to. Mr. Gardner, can I ask a question? I'm sorry to take you back to the beginning of your argument. But how does the district court's ruling with respect to which policy was excess affect your right to recover under an equitable lien theory? I mean, why does it matter? Well, that's how the court got to the amount. So they're saying that we are entitled to whatever the mortgagee was entitled to, in this case, the refuge. And so it was an equitable lien on that sum of money or its pro rata share, the $99,000. So is that something less than you say you're entitled to? Or I'm just trying to figure out how that the $99,000 was their pro rata share of the law, according to the amounts of coverage in both it and the guide one policy. So that's how we we get to that. You know, again, we believe that the court properly employed its tools for equity and fashioning a remedy to avoid a forfeiture on behalf of Western world and essentially allowing Church Mutual to outlast or wait this case out, you know, putting your hand on the proverbial car and being the last one to take it off wins the car. That's essentially what we have here is Church Mutual is claiming, well, no, you assign the, I see my time's up. May I finish briefly? And go ahead. Church Mutual is taking the position that, well, you assigned the right. So now it's too late, even though you've got a judgment. And that's just not equitable at all. Thank you, your honors. Thank you, Mr. Gardner. Mr. Ford. Thank you. I think I am the anchor leg in this race and I feel a burden to make it all clear and simple, which is a heavy burden to bear in this case. Failing that, Mr. Ford, you could grab that guitar behind you and strum a few bars. We are a full service firm, Judge. So if that's what you require, it shall be done. I agree with my friend, Mr. Waring, that this is a bizarre case. And given that, I think it's helpful that there is a nice case on point. It is from our sister state of Maryland, but it is the Clemens v. American Casualty. And it's a district court, so it's not binding. And y'all are the boss, so y'all decide. But I would suggest going through the facts of the Clemens v. American Casualty case. And it kind of traces this kind of situation where there's a mess, there's complexity, there's a mortgagee and a mortgagor. I think there may have been an unsavory brother-in-law involved in that case. Mr. Ford, I have a couple of questions sort of following up on your co-counsel's argument. So was the arson exclusion or the arson defense raised below somewhere? Did that factor into the district court's summary judgment? It was preserved at page 413 of the appendix. And basically what happened there was the church mutual did have a defense against its insured, arguable insured, abundant faith that because of deliberate acts. So I think we can probably agree if you burn down your church, you don't get insurance proceeds for it. What happened, however, with the district court was the district court decided there was an equitable lien and then going to Judge Diaz's point, decided that they had a right to the proceeds. But as Judge Diaz- But wouldn't that have been the point where you all would have argued about the arson exclusion in the policy? If we had gotten to that. OK, go ahead. If we had gotten to that, this is the mistake that the district court did that skipped that step. It said there's an equitable lien. But why didn't you- OK, go ahead. I'm trying to get there, but if I'm not, tell me and I'll redirect. It says there's an equitable lien. Therefore, you're entitled to be paid. This is the step that was improperly skipped. What should have happened then is the refuge steps into the shoes of abundant faith, but is subject to all the problems that abundant faith is subject to. And at that point, there should have been this discussion and a hearing. On whether there was arson, whether the deliberate acts exclusion applied and so on. But the district- So Mr. Ford, how does that work procedurally, right? So if the posture summary judgment is the court to grant summary judgment on the equitable lien issue and then parties are free to litigate the issues of stepping into the shoes. And at that point, the affirmative defenses come to the fore and those issues are litigated. I'm just trying to conceptualize how that would work, given you didn't really raise the summary judgment. OK. So I don't see it at JA 413, but go ahead. OK, I'll take one. So the way it would have worked below is, first, I'll put aside the fact that equitable lien did not need to be invoked because there was another policy. I'll just take, assuming the equitable lien was invoked, as your Honor's question is. At that point, the refuge steps into abundant faith as the insured and makes a claim under the policy. And I'll remind the court, and I'm going to proceed with the question, that the insured abundant faith never made a claim under this policy. That never happened. The only claim that was made was by the mortgagee, which is a separate interest. So, but I'm going to take the question as it was posed, the refuge steps into the mortgage or shoes. Then what it needs to do is, first of all, make a claim, which was never done. And then the Church Mutual has the opportunity to say, OK, now, for the first time, we have a claim from our insurer, but we have this deliberate acts. We have the dentist and the burning down and so on. So that is it. At that point, there's a hearing as to whether it was improperly made or not. But we didn't even get to that step because the insured, Church Mutual's insured, never made a claim. And we know why, because they didn't think they had a policy. And they had a policy, Guide 1, that solved everything. Church Mutual doesn't need to be a part of any of this because there is a simple solution at law that is a 1.5 million dollar policy from Guide 1 that names the refuge. And it also names abundant faith. It solves all ills under law and therefore equity does not need to be invoked, which gets me back to my original point that equity should have been invoked and there is no need for an equitable lien at all. In South Carolina, equity is only invoked when there is not an adequate remedy at law and there is a completely adequate remedy at law. I heard my friends on the other side of the aisle talking about fairness. If I if if we found that equity in the first instance was properly invoked. Then do you just lose or what would you want us to do? If your honor is to decide that, OK, there should have been an equitable lien, there was an equitable lien, that is on and this is clear under South Carolina, on proceeds. The question then goes back to the trial court. Are there proceeds to be paid under this policy? And that invokes the problem of there has to be a claim made by the insured. Was there a deliberate act and so on? Mr. Ford, can I ask a question? As I understand South Carolina law, if the mortgagee had actually been named as an insured, then irrespective of whatever defenses the original insured might have had, the mortgagee is not necessarily limited in its ability to recover because of the fact that these are different insurable interest units. So specifically here, if the insured, original insured burned down the church, we don't know that for sure, but that seems to be the allegation. But in this case, the mortgagee had actually been named in the policy. That defense would not be available to the insurance company against the mortgagee. Is that right? That's my understanding, subject to the language of the policy. But if they had been named in the policy as they were in the guide one policy, then my understanding is what you characterized it correctly, Your Honor. All right. And Mr. Ford, I did find your reservation at footnote four of JA 413. So I did find it. You are correct. All right, Mr. Ford. Thank you. We understand your arguments. We appreciate the arguments of all the counsel here this afternoon. The case has been submitted. We would typically come down from the bench, as some of you may know, and personally greet you, we obviously cannot do that this afternoon, but know that we are thankful and grateful for your appearance before us and hope to someday be able to meet you and greet you in person. So thank you very much. We'll move on to our next case.
judges: Albert Diaz, Stephanie D. Thacker, Thomas T. Cullen